Crabb, J.
delivered the opinion of the court. That the finding of the jury, in this case, was upon the count representing Cunningham as the bearer of the larger note, and upon the supposed count of the same character, founded on the smaller note, but not drawn out at length, both considered as on (the third count;) and also upon the count for money had and received, considered by the coart and jury as the fifth count, there is no room for doubt. There is nothing to lead the mind to a different conclusion, except the single circumstance of a correspondence as to the numbers of the counts, as described on the face of the declaration, and as named in the verdict.
But there is no such magic in names or numbers, as that they should close our eyes, upon what we must clearly see to be the fact from an inspection of the bill of exceptions.
The judge, in his charge to the jury, goes through the declaration, and tells them by what rules they should be governed in application to all the courts. What did he call the first count? He says, “this is an action brought by a person, who declares, that he is the rightful owner of two notes.” He speaks of a special count, stating the relative situation of the parties, and the plaintiff’s title to the notes — not note! After speaking of the special counts, he proceeds to state: “There is a third count, in which the plaintiff declares as a rightful holder,” Sic. And what? a fourth, and a fifth, and a sixth, a seventh and an eighth count? No. He says, “and counts for money had and received ;” in which expression, he doubtless included the count for money paid, as there is only one count for money had and received, the other being for money paid.
Is it not manifest, that the judge considered himself through the declaration, when he had mentioned the three *217 special counts, and the money counts? Nothing is plainer. But it is said, the jury may not have understood him. The conclusive answer is, that nearly two pages of the record are covered with minute directions to them, as to the law upon the state of facts, set out in what he called the third count; which state of facts is not set out in any other count. Besides, what goes strongly to show, that the jury did not misunderstand the judge, is, that they have found their verdict for the plaintiff below, on the very counts upon which his opinion was favorable to the plaintiff.
After the verdict, there is no complaint by the counsel, that there was a misunderstanding between the court and the jury; and the judge, who is an eye witness to the whole affair, enters judgment upon the verdict. To say, that the court and jury misunderstood each other, or, that there was any mistake between them, would be to reverse a well established rule, and to presume, (and presume strongly too,) not for, but against, the correctness of the proceedings in the court below.
The next inquiry is — does the evidence support the finding, upon what the court and jury below called the third count?
This count goes upon the ground, that the notes made by Allen, were transferred according to commercial usage; that is, that they were endorsed by the payees, the Dick-sons, to bearer, that Cunningham became the bearer, that he presented them for payment, that they were dishonored,, that Dickson was notified, and in consideration, &c. promised, Sí c.
The evidence shows, that instead of being endorsed to bearer, by the Dicksons, they were endorsed by Benjamin W. Patterson, a person having an actual existence. And the strong and satisfactory preponderancy of the testimony, is, that there was no fiction in the transaction; but that the note was so transferred, at the instance of Garner, in payment of a debt due Patterson.
The decided cases which have been referred to, 1 H. Blackstone's Rep. 313, 1 ditto 569, have no application to this case, because this was not an endorsement feignedly made *218 to a person in existence, much less an endorsement to a lie person?known to the defendant to he so, as was the fact in each of the cases cited.
But Cunningham could not, for other reasons, maintain this action as bearer; a conclusive one, without going farther, is, that the notes never were, nor could be transferred to him, (as in such case they must,) by delivery. They were in suit, in the name of Patterson, the legal, owner; and all the interest that Cunningham could acquire by the assignment of the attorney’s receipt, (even if Patterson had assented to it,) would be an equitable right to the proceeds of the judgment when recovered.
Lastly. How is it with regard to the count for money had and received? Did the evidence support that count? This question is not without difficulty. We have, however, come to a result, which is satisfactory to our minds; and in doing so, we disclaim the aid of any abstract spirit of justice, whose assistance has been so much invoked by the counsel on one side, and- deprecated so much by those on the other. It is the law, the legal justice of a question, or cause, which must make the rule of judicial action; and unless the finding upon this count is supported upon this latter principle, the judgment ought to be reversed.
The judge below substantially, though not precisely in these terms, left to the jury to determine, whether these notes were not transferred to Patterson as his own, and whether Dickson did not unite with Garner, notwithstanding they had been thus transferred, in inducing Cunningham to take an assignment of the claim from Garner, when Garner bad no authority to assign, and by his assignment vested no right in his assignee; and told them, that if by means of this sort, Dickson had enabled Garner to get, and Cunningham to lose the consideration money of the bargain, and had got the amount of the notes from Garner, the plaintiff would be entitled to a verdict on this count.
Rhea states, that Dickson said, that he and Patterson Understood one another — that he had made use of Patterson’s name, and Pattersofi of his name j which indistinct' *219 representation, was probably made for the very purpose of inducing Cunningham and Rhea, who were both present, to receive Garner’s unauthorised assignment. But Camp-hell, the attorney, who managed the business, proved, that although he handed the receipt for the notes, either to Garner or Dickson, he believes to Garner, yet he understood they were to be collected on account of Patterson; and that his impression was, that Patterson had the interest in them— that they were for Patterson’s benefit — that he had attended to other cases of Patterson’s, as his attorney, at the request of Garner, collected the money and paid it to Patterson, or his agent — that he had heard Dickson say, that Garner had received from him the above notes, and that they were transferred to pay a debt Garner owed Patterson.
It also appeared, that Dickson owed Garner ior a tan-yard, that Garner owed Rhea, and Rhea owed Cunningham; and the circumstances were strong to prove, that by aiding Garner in getting off the claim against Allen, Dickson was either in the first instance procuring, or finally consummating, the arrangement by which he procured from Garner a credit on his account.
It is said by the counsel for the plaintiff in error, that Patterson might easily have been produced by the defendant in error, in order to prove this allegation, if true. The answer is, that prima facie, the ownership of the judgment, was in Patterson. The contrary came with but a bad grace from Dickson, who had assigned to him, by writing, under his hand. And at all events, it devolved on him to produce his friend Patterson, who made so free with his name, and with whose name Dickson made so free, to prove the contrary. And no doubt the non-production of Patterson, and especially the absence of Garner, who lived in the town where the court was sitting, had much effect on the minds of the jury. It does not clearly appear, when Dickson got credit from Garner for the notes. But from the interest taken by Dickson, in the transfer to Cunningham, there was good ground for the jury to infer, that it was contemporaneous with the arrangements among the others. Suppose what we may, we cannot but conclude, that the jury were *220 abundantly authorized to believe the facts supposed by the
The question is, whether, if these facts exist, Cunningham had a right to disaffirm the contract, and recover back his consideration money from Dickson? If Cunningham had paid money to Dickson, in consideration of the assignment, no person can doubt, but that it could forthwith be recovered, back. But it is objected, (and this creates the principal difficulty in the cause,) that there was no privity between Cunningham and Dickson; or, in other words, that Dickson did not receive Cunningham’s money. - . Looking at this case, as a revising court, after verdict, and a motion for a new trial overruled in the court below, it is believed, that we are not authorized to say, that the evidence was insufficient to authorize the inference on the part of the jury, that Dickson did have and receive money, which, by law, was for the use of Cunningham. By aiding Garner, in successfully assigning to Cunningham a suit, which belonged to neither, Dickson contributed towards Cunningham’s giving a credit to Rhea, in account, in other words, paying money to Rhea; and Rhea giving Garner a credit, in other -words, paying money to Garner; and Garner giving Dickson a credit, in other words, paying money to Dickson. See Tatlock vs. Harris, 3 Term Rep. 174. It was no strained inference then, but one believed to be authorized by the decided cases, that Cunningham’s money went to Dickson. (Longchamp vs. Kenney, Douglas’ Rep. 137; Tuttle vs. Mays, 7 John. Rep. 132; Boyd vs. Logue, Cook’s Rep. 394.)
The whole transaction being disaffirmed, as grounded in mala fide, Dickson was the man who had the money; he ivas the proper person for Cunningham to sue.
The evidence of what Dickson said at the time of the transfer of the receipt, to wit, that he was good, and in a certain event would pay the money — his saying that Cunningham could not make him pay, and he would make him take notes; and paying a part in merchandise and bank notes, as appears by a credit on the lawyer’s receipt, becomes, in this connexion, important evidence. It shows, *221 that Dickson clearly recognized the right of Cunningham to resort to him, as the person having the consideration money, and really liable to refund, if any body was liable.
It is true, that many dicta are to be found in the books, confining the action for money had and received, to cases, where they say, there has been privity of contract; as, between the payee and maker of a note, payee and acceptor of a bill, or endorsee and his immediate endorser; and this doctrine, being advanced in a nisi prius case, (Camp. Nisi Prius Cases 175,) has been introduced into the text of some editions of Chitty on Bills. But it is not supported by the best decided cases. This will sufficiently appear, without going into a minute examination of them, from the cases of Grant vs. Vaughan, 3 Burr. Rep. 1525 and 1529; Tatlock vs. Harris, 3 Term Rep. 174; Rabourgh vs. Peyton, 2 Wheaton’s Rep. 385; Riem vs. Crafts, 12 John. Rep. 90.
We must say with the supreme court of New York, in the latter case, “It is objected by counsel, that here is no privity of contract between these parties; and several authorities were cited to show, that indebitatus assumpsit will not lie, except between privies. To this objection there are two answers — first, there is a legal privity of contract between the parties in this case; secondly, it is not true, that the action for money had and received, can only be grounded on privity of contract. It is the proper remedy to recover money obtained by fraud or deceit.”
Upon the whole, upon the authority of the above cases, and those referred to below, we are of opinion, that the judgment of the circuit court ought to be affirmed.
Judgment affirmed.*

 Boardman vs. Gore and Grafton, 15 Mass. Rep. 331; Wilson vs. Coupland, 5 Barn. and Ald. 228; 1 Comyn's Digest, action on the case upon assumpsit A.J. Executors of Middleton vs. Robinson, 1 Bay’s Rep. 56.